## Smith, et al. v. Massey, et al.

(Decided January 21, 1921.)

### Appeal from Livingston Circuit Court.

Fraudulent Conveyances—Preference—Evidence.—In an action by creditors of an insolvent debtor, under section 1910, Ky. Stats., attacking certain alleged preferential sales and transfers by the debtor to certain other creditors, the preponderance of the evidence shows that the defendant creditors did not get any preference over the general creditors, and do not claim any interest in the personal property alleged to have been sold and transferred to them, or the proceeds thereof, and the action was properly dismissed as to them.

C. H. WILSON and J. R. WELLS for appellants.

MONTGOMERY & FERGUSON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

This is an equitable action by appellants, who were plaintiffs below and who are creditors of William Massey, against said Massey and others, who are also creditors, seeking to have adjudged as fraudulent and preferential certain sales and transfers of personal property and choses in action alleged to have been made by Massey to the defendant creditors, and asking that such sales and transfers be adjudged to operate as an assignment for the benefit of all the creditors of Massey under the provisions of section 1910 of the Kentucky Statutes.

It is conceded that Massey was at the time of the transactions complained of insolvent, and it is apparent that he knew of his insolvency.

In the petition a number of transactions between Massey and his several creditors were assailed, but on this appeal there is involved only the transactions between him and the appellees, J. C., T. L., and Dan Sullivant, J. C. being the father of T. L. and Dan.

The allegations of the petition in substance are that on the 15th of February, 1919, Massey was indebted to each of the Sullivants, and on that day Massey had a public sale of his personal property, at which sale each of the Sullivants bought two or three hundred dollars' worth of personal property, for which they did not pay Massey but the amounts were then, or thereafter, credit-

ed upon what Massey at the time owed them, thereby giving them a preference over the other creditors of Massey.

It was further alleged that after the sale of such personal property, and after good and solvent notes had been executed to Massey by a number of purchasers at the sale, aggregating several hundred dollars, Massey assigned and turned over to the Sullivants such notes, which were credited on Massey's indebtedness to the Sullivants, and which operated as a fraudulent preference to said Sullivants over the other creditors of Massey.

The Sullivants filed separate answers, in each of which it was denied that Massey had turned over to them any notes whatsoever, and in which it was alleged that only two of the Sullivants were at the sale which Massey had, and that those two had, in compliance with the terms of the sale, each executed to Massey his note for the amount of his purchases, payable in twelve months, and had turned over the same to Massey. And these were all the pleadings filed affecting these parties.

Massey, the debtor, testified that the two Sullivants who were purchasers at his sale had never executed to him the two notes for their purchases, but they had agreed to do so; that as to the other notes taken by him from other parties who bought property at his sale, he had put his name on the back of such notes and had left them with T. L. Sullivant, and that he, Massey, immediately thereafter left the state of Kentucky and went to the state of Illinois and was gone about two or three weeks, and that he did not know where those notes were.

The two Sullivants who were at the sale testified that they had bought two or three hundred dollars' worth of property each, and that they had each executed their notes to Massey, payable in twelve months, and each had gone security for the other in such notes, and that they had delivered them to Ed. Massey, the brother of William, and Ed. Massey states that he delivered the two Sullivants' notes to Will Massey.

T. L. Sullivant states that he did not receive the notes or any of them, or any of the proceeds of the sale of the property of Massey, or receive any credit on his debt out of the proceeds of the property, and has no interest in or title to such notes.

The other two Sullivants state, in substance, that they have not and never had any of said notes and claim no interest in or title to them, and never gave Massey credit on his indebtedness to them for.such notes, or any proceeds of the said sale.

The lower court adjudged certain transactions between Massey and other creditors than the Sullivants to be preferential and directed such creditors to pay the money into court for the benefit of all the creditors, but as to the Sullivants the petition was dismissed, and the plaintiffs have appealed.

It is difficult to see how the court under this state of the record could have entered any different judgment. The preponderance of the evidence is that neither of the Sullivants has received or claims any interest in the property sold at the sale, or the notes executed therefor, and consequently they have not been preferred over the other creditors.

At the time of the judgment in the lower court the notes executed at the sale had not matured, but it is probable the lower court through its processes has since brought into the action and subjected as far as proper the assets growing out of this sale.

Giving to the finding of fact by the chancellor its proper weight, we see no alternative except to affirm the judgment, and it is so ordered.